NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIM YAZUJIAN, | |
| Plaintiff, | **OPINION** |
| v. | Civ. No. 13-06202 |
| PETSMART, JOHN DOES 1-10, and ABC COMPANIES 1-10, | |
| Defendants. | |

**Walls, Senior District Judge**

Plaintiff Kim Yazujian claims that Defendant PetSmart, Inc. and several unknown parties are negligently responsible for an injury she suffered when she slipped and fell in a puddle at a PetSmart store in Paramus, New Jersey. Defendant PetSmart now moves to preclude the opinion report of Plaintiff's expert witness, Robert Loderstedt, and for summary judgment under Federal Rule of Civil Procedure 56. The Court reserves judgment on the expert witness motion and decides the motion for summary judgment without oral argument under Fed. R. Civ. P. 78. Defendant PetSmart's motion for summary judgment is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are uncontested except where noted. Plaintiff Kim Yazujian resides in Westwood, New Jersey. Complaint, ECF No. 1 Ex. A ¶ 0. Defendant PetSmart, Inc. ("PetSmart") is a Delaware corporation with its principal place of business in Phoenix, Arizona. Notice of Removal, ECF No. 1 ¶ 3. Defendants John Does 1-10 and ABC Companies 1-10 are fictitious persons and entities who allegedly were "owners or in control, dominion, and/or

NOT FOR PUBLICATION

operation of" a PetSmart store located at 60 Route 17, Paramus, New Jersey (the "PetSmart store") on or about January 21, 2012. ECF No. 1 Ex. A ¶¶ 1-2.

## I.    The January 21, 2012 Accident

At approximately 8:30 am on or about January 21, 2012, Plaintiff arrived at the PetSmart store to provide volunteer services for an adoption agency that operated in a room inside the store. *Id.* ¶ 1; Def. Mot. Summary Judgment, Statement of Undisputed Material Facts, ECF No. 16 at 3 ¶ 5; Plaintiff Opp. Mot. Summary Judgment, Counter-Statement of Undisputed Material Facts, ECF No. 20 at 4 ¶ 5. It was snowing when Plaintiff arrived, and Plaintiff observed the "wet" snow as she entered the PetSmart store. ECF No. 16 at 3 ¶¶ 1-3; ECF No. 20 at 3 ¶¶ 1-3. Plaintiff does not recall if there was a mat laid down in the entrance to the store when she arrived. ECF No. 16 at 3 ¶ 4; ECF No. 20 at 3 ¶ 3.

The parties dispute whether the PetSmart store opened to the public at 9:00 am or 10:00 am. *See* ECF No. 16 at 5 ¶ 22 (10:00 am); ECF No. 20 at 7 ¶ 22 (9:00 am). At approximately 10:30 am, after the store had opened under either account, Plaintiff left the adoption room to purchase cat food. She "walked throughout the store without incident, including walking up to get cat food, then traversing back to drop off her purse, then back over to the cat food section to select more cat food." ECF No. 16 at 3 ¶ 5; ECF No. 20 at 4 ¶ 5 (admitting Defendant's account of events).

At approximately 10:30 am, in an aisle of the PetSmart store containing dry cat food, Plaintiff slipped and fell near a "clear, circular puddle of water/liquid" approximately 5 to 6 inches in diameter. ECF No. 16 at 3 ¶ 7; ECF No. 20 at 5 ¶ 7. As a result of the fall, Plaintiff suffered "serious and permanent injuries, . . . great pain, shock, and mental anguish," and

NOT FOR PUBLICATION

permanent disability, ECF No. 1 Ex. A ¶ 5, most notably a fractured right patella that required surgical repair. ECF No. 20 at 1.

Plaintiff offers no direct evidence of when or how the puddle of liquid in the cat food aisle was created, though she claims that she has "supplied evidence that the water within the store may have come from people tracking snow into the store prior to her accident." ECF No. 20 at 5 ¶¶ 10-11, 14-16; *see also* ECF No. 16 at 4 ¶¶ 10-11. Plaintiff did not observe the puddle before she fell, nor did she observe any other wet spots on the floor of the PetSmart store before her accident. ECF No. 16 at 3 ¶ 6; ECF No. 20 at 4 ¶ 6. There was no indication that anyone had walked through the puddle of liquid in the cat food aisle before the accident, ECF No. 16 at 8 ¶ 8, though Plaintiff contests that, after her accident, there was "no way of identifying" whether anyone had previously walked through the puddle. ECF No. 20 at ¶ 8. Plaintiff observed a male customer standing several feet from where she fell and admits that the puddle may have been created by this customer, though she claims that "there are other plausible explanations for the source of the particular puddle that Plaintiff slipped on." ECF No. 16 at 4 ¶¶ 9-10; ECF No. 20 at 5 ¶¶ 9-10.

PetSmart produced to Plaintiff the statements of several employees regarding their observations on the day of the accident. Alex Walters (née Foucher), an employee of PetSmart who was stocking food in the cat food aisle approximately twenty minutes before Plaintiff's accident, submitted a sworn affidavit stating that she did not observe any water on the floor at that time. ECF No. 16 at 5-6 ¶¶ 24-27; Affidavit Alexa Walters, ECF No. 16 Ex. G ¶¶ 8-9. Katelynn Yurchak, another PetSmart employee who was working in the PetSmart store on the day of the accident, submitted a sworn affidavit stating that she walked down the cat food aisle "shortly before the accident" and did not see any water on the floor. ECF No. 16 at 6 ¶ 29-31;

NOT FOR PUBLICATION

Affidavit Katelynn Yurchak, ECF No. 16 Ex. I ¶ 8. Yurchak stated that, at approximately 10:30

am, she heard a "crash" and a scream and ran back into the cat food aisle, where she saw

Plaintiff on the ground with "some water on the floor around her." ECF No. 16 at 6 ¶ 30; ECF

No. 16 Ex I ¶¶ 4-7. Michael Facchini, a third PetSmart employee, stated in a February 28, 2012

PetSmart "Associate Statement Form" that he was in the cat food aisle "early that morning" and

that "everything was fine." ECF No. 16 at 6 ¶ 33; Michael Facchini Associate Statement, ECF

No. 16 Ex. I. Facchini was in another aisle at the time of the accident and heard a scream. He

then went to the cat food aisle, saw Plaintiff on the ground, and observed "water from customers

coming from the snow [and] shopping in that aisle." *Id.* Arjune Shiro, a fourth PetSmart

employee, stated in a February 27, 2012 PetSmart "Associate Statement Form" that she was

working in another area when she "heard some commotion in the cat aisles." Certif. James P.

Kimball in Supp. P. Opp. Mot. Summary Judgment, ECF No. 20-1 Ex. C at 70. Shiro went over

to the cat food aisle and saw Plaintiff on the floor. Shiro stated she and other employees "started

to use towels and mops and wiped up any wet spots that were caused by people walking in with

snow on their shoes." *Id.*

  Elizabeth Davila (née Chani) was the operations manager at the PetSmart store on the day

of the accident. ECF No. 20 at 8 ¶ 39. In a deposition taken on October 13, 2014, Davila stated

that the floors of the PetSmart store are generally swept and cleaned "in the morning, before the

store's open," Deposition Elizabeth Davila, ECF No. 16 Ex. F at 22:6-8, and that operations

managers inspect the entire sales floor at 9:00 am "just to make sure we're ready for open." *Id.* at

22:23-23:4. On the day of the accident, however, Davila did not arrive until 10:00 am because of

NOT FOR PUBLICATION

a weather-related car accident and went directly to her office without inspecting the sales floor.
*Id.* at 31:12-24, 33:3-17.

Davila made several statements about PetSmart's general safety practices and the
additional precautions employees took on the day of the accident because of the inclement
weather. Generally, Davila said, employees at the PetSmart store practice a "[y]ou see it, you
clean it" policy, cleaning spills on the floor as soon as they notice them. *Id.* at 24:5-17.
Employees at the store take additional precautions on days with inclement weather. Davila stated
that she could not recall a written PetSmart policy setting out these precautions, but that "it was
possibly in [her] training." *Id.* at 27:1-11. According to Davila, the front doors of the PetSmart
store open into a vestibule area containing shopping carts and two large rugs, one approximately
four feet by four feet and one approximately four feet by six or eight feet. Beyond the vestibule
area, a second set of doors open into the main store. *Id.* at 26:3-13, 64:6-65-17. Because, in
weather such as snow or rain, "you know right away there will be moisture in the store from
customers," Davila stated that PetSmart employees make sure that the rugs in the vestibule area
"are laid out properly so that when customers walk in, their first step is on the rug . . . . [s]o they
can kind of dry there [sic] feet as they walk through." *Id.* at 24:25-25:8. Davila stated that the
PetSmart store did not have a second set of vestibule area mats to use if the first mats became
"too wet." *Id.* at 29:3-8. Additionally, on days with inclement weather, "[c]aution signs are
always placed in the front of the vestibule as customers walk in so they see them as they come
in." *Id.* at 25:8-12. Because Davila arrived after the store had opened on the day of the accident,
she did not know whether the caution signs were in place at 8:30 am, when Plaintiff arrived at
the store. Id. at 72:5-18. Finally, because it was snowing on the day of the accident, a PetSmart

NOT FOR PUBLICATION

employee shoveled and salted the area in front of the building "so it wasn't a slippery area." *Id.*
at 23:13-22.

Davila also stated that six "oops" stations located throughout the PetSmart store contain
plastic bags, paper towels, spray bottles, and yellow, plastic "caution" signs that allow
employees to clean up and warn customers about spills. *Id.* at 20:14-18, 65:23-66:15. Several
additional caution signs are located near the front cash register and in the pet care department. *Id.*
at 68:9-12. According to Davila, although employees regularly place these signs to warn
customers when loading orders of fish in the PetSmart store's pet care department "because we
know that that's going to cause wet spots on the floor," *id.* at 66:18-21, it was not regular
practice for employees to place caution signs throughout the store on days with inclement
weather. Id. at 68:18-23. According to Davila, employees did not place caution signs anywhere
other than the vestibule area on the morning of January 21, 2012. *Id.* at 67:21-69:2.

At the time of Plaintiff's accident, Davila was in her office and had not yet inspected the
floor. *Id.* at 33:24-25. Davila stated that she "could hear people in the distance yelling out" and
"immediately ran out to the aisle where everybody was," where she saw Plaintiff on the floor. *Id.*
at 39:1-6. Davila stated that she did not recall seeing any other customers in the aisle when she
arrived. *Id.* at 42:10-13. Davila asked the other PetSmart employees in the aisle if they had seen
the accident, but none of them said they had. *Id.* at 41:21-42:2. Davila stated that she noticed a
"small puddle next to [Plaintiff] by her feet," which she assumed had been caused by snow or ice
tracked in by Plaintiff because Plaintiff's shoes were wet. *Id.* at 45:1-9.

After the accident, Davila completed a PetSmart Incident Report Form in which she
stated that the "[f]loors were wet due to snow weather conditions." Elizabeth Chani Incident
Report Form, ECF No. 20 Ex. C at 1. Davida later completed a PetSmart Associate Statement in

6

NOT FOR PUBLICATION

which she stated that she and the other employees "didn't realize, however, how much snow was being tracked in and melting into puddles throughout the store until after [Plaintiff] fell." Elizabeth Chani Associate Statement, ECF No. 20 Ex. C at 3. At her deposition, Davila stated that, in fact, she only observed one puddle other than the puddle immediately next to Plaintiff, located in the "drive aisle" between the cat food aisle and the registers at the front of the PetSmart store. *Id.* at 46:23-47:2.

## II.    Plaintiff's negligence action and initial discovery

On September 27, 2013, Plaintiff filed a one-count complaint against Defendants PetSmart, John Does 1-10, and ABC Companies 1-10 in the Superior Court of New Jersey, Law Division, Bergen County. ECF No. 1 Ex. A. In the complaint, Plaintiff alleges that Defendants "negligently and carelessly allowed a dangerous and hazardous condition to exist [in the PetSmart store], or failed to warn of the same, which caused Plaintiff to fall and become seriously injured," and that, "[a]s a direct and proximate cause" of Defendants' negligence, Plaintiff suffered "serious and permanent injuries . . . great pain, shock and mental anguish," and permanent disability that will require her to "expend substantial sums of money for needed treatment." *Id.* ¶¶ 4-5. Defendant PetSmart removed the action to this Court on October 18, 2013. ECF No. 1. This Court has jurisdiction over the action because complete diversity exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. *Id.* ¶ 4.

Magistrate Judge Cathy L. Waldor signed a pretrial scheduling order on May 13, 2014. ECF No. 6. Among other things, the scheduling order set a fact discovery deadline of October 31, 2014, *id.* at 1, instructed the parties to serve and respond to interrogatories by June 23, 2014, *id.*, and instructed the parties to file affirmative and responsive expert reports by October 31,

NOT FOR PUBLICATION

2014 and December 31, 2014, respectively. *Id*. at 2. The parties exchanged discovery materials

and took depositions, including the deposition of Davila on October 13, 2014, ECF No. 16 Ex. F,

and a deposition of Plaintiff Yazujian on September 9, 2014. ECF No. 16 Ex. E. The scheduling

order was amended to set the expert report deadline for February 3, 2015, ECF No. 7, and the

parties held an additional status conference on February 11, 2015.

### III.     The Loderstedt expert report

On March 20, 2015, Plaintiff's witness Robert Loderstedt submitted a report to Plaintiff

evaluating "the circumstances surrounding the slip and fall incident." Report Robert Loderstedt

(the "Loderstedt Report"), ECF No. 16 Ex. C. Loderstedt drew on "materials . . . considered to

be authoritative generally and widely accepted customs and safety practices in the retail

industry" and his own "forty (40) years of experience in business/industry," and reviewed:

> Pleadings, Answers to Interrogatories and Responses to Notice to Produce served
> on plaintiff and defendant, Requests for Production of Documents served
> upon PetSmart with responses and attachments, customer incident report, PetSmart
> employee/associate statements, two (2) photographs of the incident area taken on
> the date of the incident, Depositions of Kim Yazujian, Plaintiff and Elizabeth
> Davila, Defendant PetSmart operations manager, Corporate Governance
> Guidelines and Statement of Ethics, PetSmart Associate Handbook, Internet review
> of PetSmart and its website.

*Id*. at 1. Loderstedt reached the conclusion that, "on Saturday January 21, 2012 at the PetSmart in

Paramus deviated from generally accepted customs and safety practices of the retail industry

discussed in this report," and that "[t]his was a direct and proximate cause of Ms. Yazujian slip

and fall." *Id*. at 13. Loderstedt stated that PetSmart "failed to either have in place or implement"

eight specific "generally accepted customs and safety practices of the retail industry" to better

prevent or detect dangerous conditions created by the inclement weather, including increased

inspections of the sales floor, frequent mopping, employee training on the placement of mats and

NOT FOR PUBLICATION

replacement of saturated mats, the provision of umbrella bags for customers in the entrance to the store, and the placement of warning signs or cones throughout the store. *Id.*

Loderstedt was deposed on July 30, 2015 and discussed the basis for his opinion. ECF No. 16 Ex. O. Among other things, Loderstedt stated that PetSmart's "you see it, you clean it" policy was not "proper" because it was not a "written policy and training of employees what to look for in terms of those hazards." *Id.* at 66:10-21. Loderstedt stated that he had assumed, for purposes of the opinion, that PetSmart did not have such a policy because he had not been provided with one, but that a written policy would hypothetically "satisfy" him. *Id.* at 66:22-67:6.

## IV.    Defendant PetSmart's request for admissions

On November 11, 2015, new counsel John Michael Wutz entered an appearance on behalf of Defendant PetSmart. ECF No. 12. Defendant's previous counsel, Andrew S. Turkish, withdrew the following day. ECF No. 13. On December 16, 2015, Defendant PetSmart served Requests for Admissions on Plaintiff. ECF No. 16 at 4 ¶ 12; Request for Admissions, ECF No. 16 Ex. B. Due to an "oversight by Plaintiff's counsel," Plaintiff did not respond to the requests for admissions until May 16, 2016, after Defendant PetSmart had filed its motion for summary judgment. ECF No. 20 at 1; Plaintiff Response to Request for Admissions, ECF No. 20 Ex. A.

Among the requests to which Plaintiff initially did not respond were admissions that Plaintiff has no proof or evidence regarding (a) how long the puddle of water/clear water was on the floor in the cat food aisle before she fell, ECF No. 16 Ex. B ¶ 20, (b) whether PetSmart or its

NOT FOR PUBLICATION

employees' were aware of the puddle before Plaintiff fell, *id.* ¶ 29, or (c) whether the puddle was caused by a PetSmart employee. *Id.* ¶ 30.

## V.     Defendant PetSmart's motion for summary judgment

On April 18, 2016, Defendant PetSmart filed a motion for summary judgment under Fed. R. Civ. P. 56. ECF No. 16. Defendant argues that summary judgment is warranted because there is no genuine dispute of material fact that Defendant did not breach the duty of care it owed to Plaintiff under New Jersey's negligence standard. Defendant claims Plaintiff offers no evidence (a) that Defendant caused or had actual or constructive notice of the dangerous condition, *i.e.* the puddle of liquid in the cat food aisle, or (b) that the puddle was caused by undetected melted snow. Defendant also argues that the report and testimony of Loderstedt must be precluded because it does not meet the criteria for expert witness admissibility set forth in *Daubert v. Merrell Down Pharmaceuticals*, 509 U.S. 579 (1993).

The Court granted Plaintiff a fourteen-day extension to file an opposition brief on April 21, 2016, extending the motion day to June 6, 2016. ECF No. 19. Plaintiff filed a brief in opposition, including her own counterstatement of undisputed facts, on May 16, 2016. ECF No. 20. On June 7, 2016, one week after the deadline for filing a reply brief and one day after the motion day, *see* L. Civ. R. 78.1, Defendant filed a reply brief in further support of its motion for summary judgment. ECF No. 21.[1]

### STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] Admonition to all Parties: future failure to comply with the Court's filing deadlines will result in the Court's refusal to consider filings.

NOT FOR PUBLICATION

Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. Nor is it appropriate for the court to "make credibility determinations" about the evidence presented by parties. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). When there is a genuine dispute as to a material fact, the court must view that fact in the light most favorable to the non-movant. *Scott,* 550 U.S. at 380. A "district court c[an] dismiss for failure to state a claim upon motion for summary judgment, but a motion so decided is functionally equivalent to a motion to dismiss." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir. 1977) (citing *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968)); *see also Melo v. Hafer*, 912 F.2d 628, 633 (3d Cir. 1990), *aff'd*, 502

NOT FOR PUBLICATION

U.S. 21 (1991) (court may "dismiss[] an action for failure to state a claim on the face of the pleadings on a motion for summary judgment," which is "equivalent to a motion to dismiss").

## DISCUSSION

### I.   The Court reserves judgment on Defendant's *Daubert* motion.

Defendant PetSmart argues that Loderstedt's expert report and testimony are inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), because they do not meet the Third Circuit's requirements of "reliability" and "fit." *Id.* at 23-29 (citing *Elock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)). Defendant argues that, because Plaintiff is "required to submit expert testimony to establish an essential element" of her case, the Court should grant summary judgment on the basis of the Loderstedt Report's inadmissibility alone. *Id.* at 29 (citing *Oddie v. Ford Motor Co.*, 234 F.3d 136 (3d Cir. 2001)).

Defendant does not explain why expert testimony is "required" for Plaintiff to establish her negligence claim, so the Court will not grant summary judgment based solely on the basis of a *Daubert* ruling. Nor, as the Court will discuss, is a *Daubert* ruling necessary to decide Defendant's motion for summary judgment. Even if the Court were to preclude Loderstedt's report and testimony, other evidence creates genuine issues of material fact in this case. The Court reserves judgment on Defendant's *Daubert* motion.

### II.   Defendant's December 16, 2015 Requests for Admissions are untimely and will not result in Plaintiff's admissions by default.

Defendant bases its summary judgment argument, in part, on several "admissions" it claims Plaintiff made by failing to timely respond to Defendant's December 16, 2015 Requests for Admissions. Plaintiff requests permission to withdraw these admissions. Because Defendant's Requests for Admissions were served well after the scheduled close of fact

12

NOT FOR PUBLICATION

discovery, the Court finds that Plaintiff did not make any admissions by failing to timely respond.

Federal Rule of Civil Procedure 36(a) allows a party to "serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of [Fed. R. Civ. P. 26(b)(1)] relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of described documents." Federal Rule of Civil Procedure 26(b)(1), in turn, defines the scope of discovery and provides that the general scope may be "otherwise limited by court order." Fed. R. Civ. P. 26(b)(1). Under Fed. R. Civ. P. 36(a)(3), a matter in a valid request for admissions "is deemed admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection address to the matter and signed by the party or its attorney. . . ." Fed. R. Civ. P. 36(a)(3).

Federal Rule of Civil Procedure 26(f) requires parties to submit to the court a joint proposed discovery plan that includes, among other things, "when discovery should be completed." Fed. R. Civ. P. 26(f)(3)(C). District of New Jersey Local Rule 26.1(b)(2) requires the parties to submit their discovery plan, including "[t]he date by which discovery should be completed," to the Magistrate Judge within fourteen days of their initial conference with the Magistrate Judge, L. Civ. R. 26.1(b)(2), and Magistrate Judge Waldor's judicial preferences require the parties to submit their proposed joint discovery plan "no later than three (3) business days before the scheduled Rule 16 conference." Hon. Cathy L. Waldor, Civil Case Management Order, at 2, available http://www.njd.uscourts.gov/sites/njd/files/JWaldorCivilCaseManagementOrder.pdf.

NOT FOR PUBLICATION

As discussed, the parties held an initial pretrial conference on May 13, 2014, and

Magistrate Judge Waldor signed a pretrial scheduling order that same day. ECF No. 6. The

scheduling order provided, in part, that "[f]act discovery is to remain open through 10/31/14. All

fact witness depositions must be completed by the close of fact discovery. No discovery is to be

issued or engaged in beyond that date, except upon application and for good cause shown." *Id.* at

1. The pretrial scheduling order was amended on October 8, 2014 to extend the final dates for the

submission of expert reports, *see* ECF No. 7, but the fact discovery period was never extended.

On December 16, 2015, more than a year after the close of fact discovery, *see* ECF No. 6

at 1, Defendant PetSmart served Requests for Admissions on Plaintiff. ECF No. 16 at 4 ¶ 12.

Although the pretrial scheduling order provided that "[n]o discovery [was] to be issued or

engaged in" after October 31, 2014, "except upon application and for good cause shown," ECF

No. 6 at 1, Defendant did not apply for permission or otherwise show cause to serve its late

Requests for Admissions. It follows that the Requests for Admissions were "limited by court

order," Fed. R. Civ. P. 26(b)(1), and were not permitted under Fed. R. Civ. P. 36(a). Plaintiff's

failure to timely respond to the Requests for the Admissions will not result in the matters being

deemed admitted, Fed. R. Civ. P. 36(a)(3), because the Requests themselves were not authorized

by the pretrial scheduling order or the Federal Rules of Civil Procedure.

**III. The Court denies Defendant PetSmart's motion for summary judgment.**

To make a *prima facie* case for common law negligence in New Jersey, a plaintiff must

establish four elements: (1) a duty of care owed to plaintiff by defendant, (2) a breach of that

duty by defendant, (3) causation, and (4) actual damages. *Brunson v. Affinity Fed. Cred. Union*,

199 N.J. 381, 400 (N.J. 2009). Ordinarily, the plaintiff bears the burden of proving each of these

elements. *Id.* "The mere showing of an incident causing the injury sued upon is not alone

NOT FOR PUBLICATION

sufficient to authorize the finding of an incident of negligence." *Long v. Landy*, 35 N.J. 44, 54 (N.J. 1961). "An inference [of negligence] can be drawn only from proved facts and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess." *Id.*

Defendant argues that summary judgment is warranted because Plaintiff fails, as a matter of law, to establish the second and third elements of her claim. Defendant claims that Plaintiff cannot provide any evidence (a) that PetSmart breached its duty of care by either creating the puddle in which Plaintiff slipped or failing to clean it up despite having actual or constructive notice of it, and (b) that PetSmart's alleged negligence was the cause of her accident. Plaintiff argues that she provides enough evidence to create genuine disputes of material fact about those elements. The Court agrees with Plaintiff.

A. **Summary judgment is not appropriate with respect to the second element of Plaintiff's cause of action, breach of duty of care.**

Defendant claims that Plaintiff fails to present any evidence demonstrating that PetSmart breached its duty of care to provide a safe environment for shopping at the PetSmart store. To repeat, a business owner owes invitees a duty to "discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." *Nisivoccia*, 175 N.J. at 563. Generally, it is "the function of the jury to determine the condition of the property and a reasonableness of defendant's care" in preventing unsafe conditions. *Filipowicz v. Dilletto*, 350 N.J. Super. 552, 561 (N.J. App. Div. 2002). The Court finds that a genuine issue of material fact exists as to whether PetSmart breached this duty, creating a question for the jury and rendering summary judgment inappropriate.

NOT FOR PUBLICATION

As an initial matter, Plaintiff offers no evidence that a PetSmart employee created the

puddle. There is no genuine issue of fact that PetSmart did not breach its duty to "avoid creating

conditions that would render the premises unsafe." *Nisivoccia*, 175 N.J. at 563.

Ordinarily, if a defendant did not create the dangerous condition that caused an accident,

"an injured plaintiff asserting a breach of duty must prove, as an element of the cause of action,

that the defendant had actual or constructive knowledge of the dangerous condition that caused

the accident." *Id.*; *see also Brown v. Racquet Club of Bricktown*, 95 N.J. 280, 291 (N.J. 1984).[2]

Again, there is no question about Defendant's lack of *actual* knowledge. As Defendant argues,

Plaintiff offers no evidence that Pet Smart or any employee had actual knowledge of the puddle

in the dry cat food aisle before Plaintiff was injured. ECF No. 16 at 15-16. Multiple employees

testified that they walked through the aisle before the accident and did not see a puddle, *id.*, and

Davila stated in her deposition that she did not believe the PetSmart store had cameras

surveilling the cat food aisle on the day of the accident. ECF No. 16 Ex. F at 54:13-25.

Whether PetSmart or its employees had *constructive* notice of the puddle, however, is a

genuine question of fact for a jury to decide. "A defendant has constructive knowledge [of a

dangerous condition] when the condition existed 'for such a length of time as reasonably to have

resulted in knowledge and correction had the defendant been reasonably diligent.'" *Troupe v.

Burlington Coat Factory Warehouse Corp.*, 443 N.J. Super. 596, 602 (N.J. App. Div. 2016)

---

[2] The exception to this general requirement is the "mode-of-operation" rule, which relieves a
plaintiff from the burden to demonstrate actual or constructive knowledge when "a dangerous
condition is likely to occur as the result of the nature of the [defendant's] business, the property's
condition, or a demonstrable pattern of conduct or incidents." *Prioleau v. Kentucky Fried
Chicken, Inc.*, 223 N.J. 245, 260 (N.J. 2015) (quoting *Nisivoccia*, 175 N.J. at 563). Defendant
argues that the mode-of-operation rule does not apply here, ECF No. 16 at 17, and Plaintiff does
not assert the mode-of-operation rule. *See* ECF No. 20 at 15.

NOT FOR PUBLICATION

(quoting *Parmenter v. Jarvis Drug Stores, Inc.*, 48 N.J. Super. 507, 510 (N.J. App. Div. 1957)).

Constructive knowledge can be "inferred in various ways," including the "characteristics of the

dangerous condition giving rise to the slip and fall" or "eyewitness testimony" regarding the

length of the condition's existence. *Id.* (citing *Tua v. Modern Homes, Inc.*, 64 N.J. Super. 211,

220 (N.J. App. Div. 1960) (finding constructive knowledge where wax on floor had hardened

around edges, demonstrating that it had been there for a "protracted period of time"); *Grzanka v.*

*Pfeifer*, 301 N.J. Super. 563, 574 (N.J. App. Div. 1997), *certif. denied*, 154 N.J. 607 (1998)

(finding constructive knowledge where eyewitness noted that dangerous traffic light had been

"out for a while")).

      Courts have not specified the exact length of time a dangerous condition must exist for a

defendant to have constructive knowledge under New Jersey law. Instead, courts have certified a

wide range of times for jury consideration. *See*, e.g, *Romeo v. Harrah's Atlantic City Propco,*

*LLC*, 2016 WL 916685, at *5 (D.N.J. March 10, 2016) (denying defendant's motion for

summary judgment where a spill occurred four minutes before plaintiff's accident); *Ratering v.*

*Mele*, 11 N.J. Super. 211, 214 (N.J. App. Div. 1951) (holding that an "established time lapse of

at least two and a half hours" between when the plaintiff first observed garbage collected on

defendants' stairs and when she later slipped on the garbage "presented an issue for the jury's

consideration as to whether the improper condition of the stairs had existed for sufficient time as

to have been discoverable and remediable, in the exercise of reasonable care, before the injury

occurred."); *Zizi v. Gabriele D'Annunzio Lodge*, 14 N.J. Super. 200, 204 (N.J. App. Div. 1951)

("a time lapse of 45 minutes, or perhaps in given situations even a shorter one, may suffice to

create a jury question").

NOT FOR PUBLICATION

The period of time sufficient to prove a defendant's constructive knowledge also depends on the characteristics of and surrounding the dangerous condition. Again, this is an issue of fact generally left for the jury's determination. *See*, e.g, *Romeo*, 2016 WL 916685, at *5 (holding that period of four minutes between spill and plaintiff's accident, "standing alone," was not enough to give defendant constructive notice, but that this period, coupled with defendant's video surveillance of the area and employee's presence "in the area during the existence of a spill" created a genuine issue of material fact as to whether defendant had constructive notice); *McCracken v. Target Corp.*, 2011 WL 1466075, *4 (D.N.J. April 18, 2011) (denying defendant's motion for summary judgment, even though plaintiff had not proven how long before her accident a dangerous condition had existed, in part because a "reasonable jury" could find that defendant would be charged with constructive notice of spills on a "minute-by-minute basis" in a high-traffic area of a store where spills were "particularly likely").

Here a genuine issue of material fact exists as to whether Defendant PetSmart had constructive notice of the spill before Plaintiff's accident. Defendant correctly argues that Plaintiff has provided no evidence regarding exactly how long the puddle existed before her accident. ECF No. 16 at 15. Defendant, on the other hand, offers eyewitness testimony that the puddle did not exist twenty minutes, ECF No. 16 Ex. G ¶¶ 8-9, and "shortly before," ECF No. 16 Ex. I ¶ 8, the accident. *See Parmenter*, 48 N.J. Super. 507 (eyewitness testimony relevant to proving constructive notice). Standing alone, this might demonstrate that the puddle did not exist long enough to "reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" *Troupe*, 443 N.J. Super. at 602. *See also Collier v. Borgata Hotel Casino & Spa*, 2009 WL 2707359, at *5 (N.J. App. Div. Aug. 31, 2009) (in case where plaintiff slipped and fell in a puddle of water in a revolving door in defendant casino, holding that "no reasonable

18

NOT FOR PUBLICATION

jury could have concluded that defendant had sufficient time in which to exercise reasonable care to remove the water from the floor or should have discovered its existence or corrected it" because "plaintiff did not show how long the water was on the floor"). Plaintiff presents evidence about the circumstances surrounding the puddle, however, that creates a genuine issue of material fact for the jury.

     **1.  Plaintiff presents evidence that Defendant should have been "especially vigilant."**

     Unlike in *Collier*, where the weather was "clear" and where the defendant presented evidence that two other people had walked through the door before the plaintiff with "no problem," *id.* at *1, the circumstances surrounding Plaintiff's accident in this case create a question for the jury about the "reasonableness of defendant's care." *Filipowicz*, 350 N.J. Super. at 561. Plaintiff provides evidence that PetSmart employees, including Davila, the PetSmart store's operations manager, were aware that it was snowing outside, increasing the likelihood that customers would drip water into the store. *See*, e.g., ECF No. 16 Ex. F at 24:25-25:14. Plaintiff also presents evidence that PetSmart employees did not place additional mats in front of the store to decrease this likelihood. *See id.* at 29:3-8. Plaintiff also presents evidence that PetSmart employees did not place warning signs throughout the store that could have helped Plaintiff avoid the dangerous condition. *See id.* at 67:21-69:2. Finally, Plaintiff presents evidence that, although PetSmart employees were trained to "walk the floor" to "make sure that there's no moisture on the floors throughout the store," they did not monitor the floors for puddles on a set schedule or with any increased frequency on the day of the accident, even though they were aware of the increased likelihood that customers would drip water into the store. *See id.* at 30:5-20. "[A] jury could conclude that, in light of the circumstances," namely the inclement weather

NOT FOR PUBLICATION

and Defendant's failure to undertake certain safety procedures that would make an accident less likely, "it is reasonable to require [Defendant] to be especially vigilant in monitoring the area where Plaintiff fell." *McCracken*, 2011 WL 1466075, at \*4.

### 2. Plaintiff presents evidence that the puddle was caused by snow tracked in from outside the PetSmart store.

Defendant argues that Plaintiff merely "*assumes* that the liquid she slipped on 'came from somebody's feet that had snow on them.'" ECF No. 16 at 15 (emphasis in original) (quoting ECF No. 16 Ex. E at 87:17-18). This is relevant because, even if circumstances required Defendant to be "especially vigilant" and shortened the period in which Defendant might be deemed to have "constructive notice" of puddles caused by the inclement weather, Defendant may not have had constructive notice of an unpredictable puddle caused by something other than the weather.

Though it is a close question, Plaintiff presents enough evidence to create a genuine question of fact about the puddle's origins. ECF No. 20 at 5-7. Plaintiff points to the statements of several PetSmart employees who entered the cat food aisle immediately after her accident. Davila's PetSmart Incident Report Form includes a statement that the "[f]loors were wet due to snow weather conditions," ECF No. 20 Ex. C at 1, and her PetSmart Associate Statement includes the observation that employees "didn't realize, however, how much snow was being tracked in and melting into puddles throughout the store until after [Plaintiff] fell." *Id*. at 3. Michael Facchini's Associate Statement also states that he observed "water from customers coming from the snow [and] shopping in that aisle" on the floor of the pet food aisle immediately after Plaintiff's accident. ECF No. 16 Ex. I. Finally, Arjune Shiro noted in her Associate

NOT FOR PUBLICATION

Statement that employees "started to use towels and mops and wiped up any wet spots that were caused by people walking in with snow on their shoes." ECF No. 20-1 Ex. C at 70.

Defendant PetSmart contests that all of these statements are inadmissible hearsay because Plaintiff offers them for the truth of the matter asserted, *i.e.* that the puddle was caused by melted snow tracked in by customers, and because Plaintiff "had every opportunity to depose these individuals during the discovery phase of litigation." ECF No. 20 at 5-6. Defendant's argument, apparently, is that Plaintiff must present this evidence through deposition testimony. Defendant is correct that, in a motion for summary judgment, a party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *Id.* at 5 (quoting Fed. R. Civ. P. 56(c)(2)). But "the Supreme Court has rejected the view that the 'nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.'" *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 466 n.12 (3d Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). "Rule 56 does not require the nonmoving party to depose her own witnesses." *Celotex*, 477 U.S. at 324. "Hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present the evidence through direct testimony, i.e., in a form that 'would be admissible at trial.'" *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1543 (3d Cir. 1990) (quoting *Williams*, 891 F.2d at 466 n.12).

Here there is "no indication" that Davila, Facchini, or Shiro "would be unavailable to testify at trial," so their written statements "are capable of proof through admissible evidence." *Id.* The Court will not exclude them as hearsay for purposes of this motion.

Defendant also argues that Shiro's statement that employees "started to use towels and mops and wiped up any wet spots that were caused by people walking in with snow on their

NOT FOR PUBLICATION

shoes," ECF No. 20-1 Ex. C at 70, is barred by Federal Rule of Evidence 407 because it constitutes evidence of a subsequent remedial measure. The Court agrees.

Rule 407 provides that evidence of subsequent measures "that would have made an earlier injury or harm less likely to occur" are not admissible to prove "negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." Fed. R. Evid. 407. A court "may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures." *Id.* Rule 407 "operates on the presumption that undue prejudice is likely in certain situations . . . expressing a distrust of a jury's ability to draw the proper inferences from the evidence." *Kelly v. Crown Equipment Co.*, 970 F.2d 1273, 1277-78 (3d Cir. 1992). "The Rule bars introduction of subsequent remedial measures because the evidence creates an inference of culpability." *Talsania v. Kohl's Dept. Store*, 2009 WL 1438232, at *3-4 (May 20, 2009) (citing *Diehl v. Blaw-Knox*, 360 F.3d 426, 430 (3d Cir. 2004)), *reconsideration denied* 2009 WL 1562325 (June 3, 2009).

Plaintiff provides Shiro's statement for the purpose of proving Defendant's negligence, so the statement is inadmissible here. Although Plaintiff may claim that she presents Shiro's statement to prove that the puddle was "caused by people walking in with snow on their shoes," and not that Defendant was negligent in failing to mop up the puddle before Plaintiff fell, the puddle's origin is relevant to the negligence claim. The issues of ownership, control, and the feasibility of precautionary measures are not in dispute, and Defendant has not yet offered any testimony contradicting Shiro's statement that the statement could impeach.

*Talsania*, another case in this district involving plaintiffs who slipped and fell on a wet floor inside the defendant's store, is instructive. 2009 WL 1438232, at *3-4. In *Talsania*, the

22

NOT FOR PUBLICATION

plaintiffs attempted to introduce evidence that employees mopped the floor after the accident "to corroborate their claim of a dangerous condition," not to "establish[ ] their negligence claim against Defendant." *Id.* at *3. The defendant in *Talsania* denied that a wet spot on the floor existed *at all*, not merely that it was caused by a particular factor. The court excluded the evidence, noting that, "[w]ithout the existence of a dangerous condition, Plaintiffs cannot establish the requisite duty for their negligence claim. Rule 407 was specifically designed to prevent such uses of subsequent remedial measure evidence." *Id.* On plaintiffs' motion for reconsideration, the court also excluded the evidence under Federal Rule of Evidence 403, holding that "the evidence would have little probative value that would be substantially outweighed by the dangers of unfair evidence and confusing the jury" because the "mopping of a floor after someone has fallen could lead to many possible inferences, of which Plaintiffs' chosen inference is but one." *Talsania v. Kohl's Dept. Store*, 2009 1562325, at *4 (D.N.J. June 3, 2009). This Court agrees with the *Talsania* court's reasoning and will exclude Shiro's statement in its analysis here, but it will consider the statements of Davila and Facchini.

### 3.   Combined, this evidence creates a question of material fact about Defendant's constructive notice of the dangerous condition.

Although the Court repeats that it is a close question, Plaintiff presents enough evidence to create a genuine dispute of material fact whether (a) the puddle was caused by snow tracked in from outside the PetSmart store and (b) Defendant had constructive notice of the puddle. The Court is persuaded, in part, by the New Jersey Appellate Division's reasoning in *Parmenter v. Jarvis Drug Store, Inc.*, cited by Plaintiff. ECF No. 20 at 13 (citing *Parmenter v. Jarvis Drug Store, Inc.*, 48 N.J. Super. 507, 510-11 (N.J. App. Div. 1957)). In *Parmenter*, as in *Collier*, the plaintiff slipped and fell in a wet doorway. In *Parmenter*, unlike in *Collier*, it had been raining

23

NOT FOR PUBLICATION

"very hard" all morning, and the plaintiff presented evidence that the wet floor was caused by rain "blown in or carried in when the door was opened by customers." *Id.* at 511. The trial court granted involuntary dismissal of the plaintiff's action at the close of evidence, holding that "a jury could not reach any 'reasonable inference that this condition had existed more than momentarily . . . There is no evidence that it was an uncommon accumulation of water." *Id.* at 510. On appeal, the Appellate Division reversed, holding that "[i]t was for [the jury] to say whether the wet condition, invariably the cause of the slipperiness, had lasted for such a period of time that reasonable attention thereto would have both apprised defendant of the danger to its invitees and led to the remedying thereof." *Id.* at 511.

The Court reaches the same conclusion here. Because it is generally the function of the jury to determine "the reasonableness of defendant's care," *Filipowicz*, 350 N.J. Super. at 561, and because courts have certified the question of constructive notice on as little as a "minute-by-minute basis," *see McCracken*, 2011 WL 1466075, *4, it is for a jury to decide whether the snowy conditions on the day of Plaintiff's accident required Defendant PetSmart and its employees to be especially vigilant in warning customers, detecting puddles, and cleaning them up; whether the puddle was caused by snow tracked in from outside the PetSmart store; and whether the puddle existed for such a period of time that "reasonable attention thereto" would have made Defendant aware of its existence and allowed Defendant to remedy the condition. *Parmenter*, 48 N.J. Super. at 511. Summary judgment is inappropriate with respect to the second element of Plaintiff's cause of action.

NOT FOR PUBLICATION

**B. Summary judgment is not appropriate with respect to the third element of Plaintiff's cause of action, causation.**

Summary judgment is also inappropriate because a genuine issue of material fact exists as to whether Defendant's alleged negligence caused Plaintiff's injury.

A defendant's negligent breach of a duty of care, alone, does not render the defendant liable for damages. A plaintiff must also "introduce evidence which provides a reasonable basis for the conclusion that it was more likely than not that the negligent conduct of the defendant was a cause in fact of the injury." *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 74 (3d Cir. 1996) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 41, at 269 (5th ed. 1984)). "If damage would have occurred in the absence of a party's negligence, then before responsibility may be imposed, the negligent conduct must be shown to have been a substantial factor in causing the harm." *State Dept. of Environmental Protection v. Jersey Central Power & Light Co.*, 69 N.J. 102, 110 (N.J. 1976) (citing Restatement, Torts 2d § 432(1) at 430 (1965)).

The parties do not dispute that Plaintiff slipped and fell in the puddle in the cat food aisle. Defendant PetSmart challenges whether Plaintiff demonstrates that the puddle was caused by melted snow, and whether its diligence in detecting and cleaning up melted snow could have prevented Plaintiff's injury. ECF No. 16 at 15. For the reasons discussed, Plaintiff presents sufficient evidence to create a genuine question of fact about the puddle's origins and whether Defendant's alleged negligence in detecting and cleaning up the puddle was a "substantial factor" in causing her to slip and fall. *Jersey Central Power & Light Co.*, 69 N.J. at 110. Summary judgment is inappropriate with respect to the third element of Plaintiff's cause of action.

NOT FOR PUBLICATION

## CONCLUSION

The Court defers judgment on Defendant's *Daubert* motion to preclude the report and

testimony of Plaintiff's expert witness Robert Loderstedt and holds that Plaintiff did not make

admissions by failing to respond to Defendant's untimely December 16, 2015 Requests for

Admissions. Because Plaintiff has presented sufficient evidence to create genuine disputes of

material fact whether (a) Defendant PetSmart had constructive notice of a dangerous condition

and (b) Defendant PetSmart's negligence caused Plaintiff's injury, the Court denies Defendant's

motion for summary judgment. An appropriate order follows.


DATE: 16 August 2016

William H. Walls
Senior United States District Court Judge

26